IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

AUG 0 5 2014

Clerk, U S District Court
District Of Montana
Billings

CHERYL ROSS,,

Plaintiff,

vs.

BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND, LTD.,

Defendant.

CV 14-95-BLG-SPW

ORDER DENYING MOTION
TO QUASH DEPOSITION
SUBPOENA

Plaintiff Cheryl Ross ("Ross") filed this action seeking the Court's Order quashing a deposition subpoena served upon her. (Doc. 1). Alternatively, she seeks a protective order. (*Id*). Ross also requested a hearing on her motion. (*Id.*). After reviewing the parties' memorandums, the Court has determined that a hearing is not necessary. For the reasons set forth below, the Court denies Ross's motion.

I. **BACKGROUND**[1]

Ross's deposition subpoena is part of bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Florida. The bankruptcy

---

[1] The Court derived the background information from the parties' filings and related exhibits respecting the instant motion. (Docs. 1, 2, 12, and 24).

1

proceedings resulted from the financial collapse of the Fontainebleau Resort and Casino ("the Fontainebleau Project") in Las Vegas, Nevada, a failed project resulting in debt obligations of approximately $1.8 billion. Defendant Brigade Leveraged Capital Structures Fund, Ltd. ("Brigade") and other creditors in the bankruptcy proceedings (collectively "Term Lenders") issued the deposition subpoena as part of the bankruptcy proceedings.

The Term Lenders also are plaintiffs in a related lawsuit pending in Nevada state court ("Nevada state court action"). In that action, the Term Lenders are suing, among others, the general contractor for the Fontainebleau Project – Turnberry West Construction ("TWC"). The Term Lenders are seeking to recover approximately $1 billion in damages for alleged false certifications made by TWC and others in connection with monthly loan disbursement requests and through an allegedly fraudulent set of books kept by TWC and others that hid from the Term Lenders the true progress, scope, and cost of the Fontainebleau Project. Ross was a TWC employee involved with creation and maintenance of the allegedly fraudulent books at issue in the Nevada state court action.

The Term Lenders seek Ross's deposition testimony in connection with a recently-filed motion by the Trustee in the bankruptcy action. The Trustee seeks approval of a settlement with director and officer defendants in the bankruptcy adversary proceedings. The Trustee also seeks entry of a so-called "Bar Order" as a

condition to the settlement. A Bar Order would bar the Term Lenders from pursuing their claims in the Nevada state court action against the bankruptcy proceedings director and officer defendants.

The bankruptcy court has scheduled an evidentiary hearing on the Bar Order motion for September 11 and 12, 2014, and has given the parties until August 22, 2014, to conduct discovery. The bankruptcy court, at the hearing, will attempt "to determine whether an exception to the prohibition of the Bar Order against the Term Lenders' truly independent claims is equitable and justified." *In re: Fontainebleau Las Vegas Holdings, LLC, et al.*, 09-21481-BKC-AJC (Bankr. S.D. Fla. July 11, 2014) (Doc. 2-7 at 9). To make this determination, the bankruptcy court likely will have to determine, among other things, whether claims in the Nevada state court action are "viable" and, thus, whether a Bar Order should issue. The Term Lenders seek Ross's testimony as part of their discovery in preparation for the evidentiary hearing.

Respecting the matter before this Court, Brigade served the deposition subpoena on Ross July 11, 2014. (Doc. 1 at 1). Ross filed her motion to quash on July 17, 2014. (*Id.*) Brigade filed its opposition brief on July 24, 2014, and also filed an unopposed motion to expedite briefing and resolution of Ross's motion to quash. (Doc. 11).

Magistrate Judge Ostby, to whom this case was originally assigned, held a

3

telephonic status conference with counsel on July 25, 2014. Judge Ostby then issued an Order setting a July 31, 2014 deadline for Ross to file her reply brief. (Doc. 17). On July 28, 2014, this case was reassigned to the undersigned. On July 31, 2014, Ross filed her reply brief. (Doc. 24).

## II. SUMMARY OF PARTIES' ARGUMENTS

Ross argues that the Court should quash her deposition subpoena for two principle reasons. First, Ross argues that she has no information relevant to the bankruptcy court's inquiry into whether that matter's settlement is fair and equitable. (Doc. 2 at 5-6, 10-13). She argues that: (1) the individuals for whom she worked and to whom she reported at TWC already have been deposed in this and other related litigation in other courts rendering her testimony unnecessary, *(id.* at 3); (2) she "has no knowledge concerning the viability of the claims in the Nevada" state court action, *id.* at 5; and (3) she is "a mid-level former employee [who] cannot bind the company ... and hasn't worked for TWC since April 2009[,]" *(id.* at 6).

The second principle reason Ross seeks to have her deposition subpoena quashed is that being deposed would unduly burden her. *(Id.)* at 5-8. She argues that: (1) being deposed "places a burden on her and her family[,]" *(id.* at 5); (2) she "should not be forced to miss more time from her employment in Montana or be oppressed by the natural and inherent stress associated with being deposed[,]"

4

especially since she does not have any relevant information, (*id.* at 6); and (3) she "has labored under the threat of subpoena and depositions long enough[ ]" and "must be protected from the undue burdens and harassing effect that a deposition invariably takes on a witness and her family[,]" (*id.*)

In response, Brigade first argues that Ross "has personal, first-hand knowledge" of matters "directly relevant to an expedited motion to approve a settlement recently filed by the Trustee in the Fontainebleau bankruptcy." (Doc. 12 at 2, 15-18). Brigade argues that: (1) Ross is a percipient witness to alleged fraud by TWC and the project developer, Fontainebleau Resorts, LLC ("FBR"), (*id.* at 3); (2) Ross "was the contract administration manager for TWC who created and oversaw the two sets of books on the Project, one she called the 'real' books (that were shared only among the defendants) and the other she called the 'bank' books (that were provided to the lenders and understated by hundreds of millions of dollars the anticipated costs to complete the Project)[,]" (*id.* at 3-4); (3) Ross's testimony is relevant to the bankruptcy court's determination of whether the Term Lenders' claims in the Nevada state court action are "viable," which determination will affect whether the bankruptcy court issues a Bar Order that would preclude the Term Lenders' claims in the Nevada state court action, (id. at *4-5*); and (4) the fact that other people may also have knowledge or have already been deposed does not insulate Ross from providing her testimony because her "views of how the Term

5

Lenders should conduct their discovery do not govern[,]" and her testimony will not be superfluous in the absence of a stipulation of liability by defendants in the Nevada state court action, (*id.* at 17-18).

Second, Brigade argues that Ross will not be unduly burdened by a one-day deposition. (*Id.* at 18). Brigade notes that Ross contends that a deposition will cause her to miss two days of work – one for the 7-hour deposition and one to prepare for the deposition with her counsel. Because she already met with her counsel to prepare for a later-cancelled deposition in the Nevada state court action, Brigade argues, "her preparation time might well be shortened." (*Id.*) Also, Brigade maintains, it is "willing to reschedule Ms. Ross's deposition at a time convenient for her [consistent with the bankruptcy court's scheduling order], including on a weekend or other day she is not working." (*Id.*) Finally, Brigade notes that Ross cited no authority supporting her assertion that she will "be oppressed by the natural and inherent stress associated with being deposed[ ]" and maintains that if such stress "were a basis to quash a subpoena, few would survive." (*Id.* at 18-19).

In her reply brief, Ross argues that the Term Lenders have premised their opposition to Ross's motion to quash "primarily on the testimony of their attorney, Kirk Dillman." (Doc. 24 at 2-10). Ross argues that Dillman's Declaration filed in support of the Term Lenders' opposition is factually unsupported and procedurally

defective, and that the exhibits to the opposition do not support the Term Lenders' arguments. Thus, Ross argues, Court should not consider any of them. (*Id.*) Ross also argues that because the Term Lenders already have the deposition transcripts of TWC principals and of directors and officers of FBR, they do not need Ross's testimony because it would be unnecessarily redundant. (*Id. at 10-12*). Finally, Ross argues that the Term Lenders' offer to depose Ross on a day that she does not work would still cause her undue burden because, even with this accommodation, she would have to give up a weekend or other non-work day. (*Id. at 12*).

## III. <u>LEGAL STANDARD</u>

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The broad right to discovery embodied in this Rule "is based on the general principle that litigants have a right to every man's evidence, and wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d

7

1289, 1292 (9th Cir. 1993) (*quoting U.S. v. Bryan*, 339 U.S. 323, 331 (1950)) (internal quotation marks omitted).

Under Rule 45(a)(1)(B),[2] a party may serve a subpoena upon a non-party, commanding the non-party to attend a deposition. "[T]he scope of discovery through subpoena is the same as that applicable to Rule 34 and other discovery rules." *Rule 45 Advisory Committee Notes, 1970 Amendment*. The non-party receiving the subpoena, however, may file a motion to quash or modify the subpoena. Rule 45(d)(3). The rule provides, in relevant part, as follows:

> (3) **Quashing or Modifying a Subpoena.**
>
> > (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> >
> > > (i) fails to allow a reasonable time to comply;
> > >
> > > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> > >
> > > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> > >
> > > (iv) subjects a person to undue burden.

Rule 45(d)(3).

Respecting whether the subpoena inflicts undue burden upon its recipient,

---

[2]References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

"non-party status is a significant factor to be considered . . . ." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009). In *Schaaf v. SmithKline Beecham Corp.*, the court explained that "in the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" 233 F.R.D. 451, 453 (E.D. N.C. 2005) (citation omitted).

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (*citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D. Kan. 2003)).

The party moving to quash a subpoena bears the burden of persuasion. *Erickson v. Microaire Surgical Instruments, LLC*, 2010 WL 1881946 at *2 (W.D. Wash., May 6, 2010) (*citing Moon*, 232 F.R.D. at 636-37 (C.D. Cal. 2005)). Whether to quash or modify a subpoena lies within the district court's wide discretion. *See, e.g., Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (noting that "a district court has wide discretion in controlling discovery.") (*quoting Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)).

## IV. DISCUSSION

As noted, Ross seeks to quash the deposition subpoena arguing only that she

has no relevant information and that sitting for a deposition would be unduly burdensome for her. The Court is not persuaded.

Respecting whether Ross's anticipated testimony falls within Rule 26(b)(1)'s standard for relevance, the Court concludes that it clearly does. Brigade argues that Ross likely has first-hand knowledge concerning alleged fraud committed by defendants in the Nevada state court action. As a TWC employee, she is alleged to have "authored monthly internal spreadsheets ... that assembled the anticipated costs to complete the Project TWC was actually building ... [and allegedly] referred to these internal reports as the 'real' books (that were shared only among the defendants) as contrasted with the 'bank' books Ms. Ross also kept (that were provided to the lenders and understated by hundreds of millions of dollars the anticipated costs to complete the Project)." (Doc. 12-1 at ¶ 11). Such information is clearly relevant to the issue before the bankruptcy court – *i.e.*, whether the Term Lenders' claims in the Nevada state court action are "viable," which determination will, in turn, affect whether the bankruptcy court issues a Bar Order that would preclude the Term Lenders' claims in the Nevada state court action.

Although some of Ross's anticipated testimony may already be known to or suspected by Brigade, it is not evident on the current record that it would be so cumulative or superfluous as to be inadmissible or to warrant an order quashing the subpoena and precluding the deposition. Rule 26(b)(1), of course, does not require

that relevant information be admissible. Rather, it requires only that the information sought in discovery appear "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). Here, Ross's anticipated testimony clearly satisfies Rule 26(b)(1).

Second, respecting whether Ross would be unduly burdened by having her deposition taken, the Court concludes that she would not. In her brief, Ross provides some non-specific, conclusory statements that she and her family would be burdened by the deposition because she "has labored under the threat of subpoena and depositions long enough[,]" and that she "must be protected from the undue burdens and harassing effect that a deposition invariably takes on a witness and her family." (Doc. 2 at 5-6) But Ross has provided no specific evidence or argument that convinces the Court that being deposed would impose upon her any unnecessary burden. Although she maintains that a deposition will cause her to miss two days of work, (Declaration of Cheryl Ross, Doc. 2-6 at ¶ 10), Brigade represents that it is willing to schedule her deposition at a convenient time – including on a weekend or other day Ross is not working – provided the setting complies with the bankruptcy court's scheduling order. Thus, any burden to Ross could be readily alleviated and, at worst, would be minimal.

Mindful that Ross is not a party to either the bankruptcy action or the Nevada state court action, the Court has afforded her objections to the subpoena "extra

11

consideration" in weighing burdensomeness against relevance. *Schaaf*, 233 F.R.D. at 453. In so doing, the Court, for the reasons already stated, concludes that any burden to Ross does not outweigh the relevance of her anticipated deposition testimony. If, as Ross argues, she "has no personal knowledge of these matters" (Doc. 24 at 2), her deposition is unlikely to be lengthy and any burden is likely to be slight.

Based on the foregoing, the Court will deny Ross's motion to quash her deposition subpoena. In addition, for the following reasons, the Court also will deny Ross's alternative request for a protective order requiring compliance with the subpoena only in the event that the bankruptcy court denies the motion for a Bar Order.

A party, like Ross here, who seeks, in the alternative to an order quashing a deposition subpoena, to limit discovery by requesting a protective order under Rule 26(c) must show a particular and specific need for the order. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test") (citation omitted); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party seeking protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete

examples, rather than broad, conclusory allegations of potential harm"). As noted in the foregoing discussion, Ross's anticipated testimony is directly relevant to the issue of whether the bankruptcy court should issue the Bar Order. Having to provide deposition testimony will not be unduly burdensome to Ross. And she has failed to demonstrate the requisite particular and specific need for the protective order. *See Blankenship*, 519 F.2d at 429; *Foltz*, 331 F.3d at 1130.

## V. CONCLUSION

Based on the foregoing, IT IS ORDERED that Ross's motion to quash her deposition subpoena (Doc. 1) is DENIED.

DATED this 5th day of August, 2014.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge

13